The document below is hereby signed.

Signed: December 3, 2013



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| STEPHEN THOMAS YELVERTON, | ) | Case No. 09-00414 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| STEPHEN THOMAS YELVERTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 10-10045 |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | Not for publication in |
| Defendant. | ) | West's Bankruptcy Reporter. |

MEMORANDUM DECISION ON REMAND

This is an adversary proceeding in which the debtor Yelverton lost standing to pursue the proceeding on August 20, 2010. When, after a long passage of time, he had failed to take steps to regain standing to pursue the adversary proceeding, this court dismissed the adversary proceeding. Not until more than a year after the adversary proceeding was dismissed for lack of standing did Yelverton take any steps to obtain authority to pursue the claims that were asserted in the proceeding. On

appeal, in *Yelverton v. District of Columbia*, Civil Action No. 11-1467, the district court affirmed the order of dismissal. Yelverton then filed a motion seeking to vacate the order affirming the order of dismissal, asserting in his motion that in the interim since the dismissal of the adversary proceeding his claims against the District had become exempt property. The district court denied that motion. That dismissal order remains in place, and precludes Yelverton from pursuing his claims, even if now exempt property, in this adversary proceeding. Yelverton has not sought relief from the order of dismissal pursuant to Fed. R. Civ. P. 60, and appears to be time-barred from doing so.[1]

   Yelverton had filed a motion to remand regarding that issue, and the district court ordered that the motion would be granted "for the limited purpose of allowing Judge Teel to determine, <u>in the first instance</u>, whether any claims relating to the Mercedes became Yelverton's by way of abandonment or exemption." [Underscoring in original.] The remand is effectively a routing to this court of a motion mis-filed in the district court appeal regarding the exemption of the claims, a motion that ought to have been filed in this court in the first instance. *See* Fed. R. Bankr. P. 5005(c) ("Error in Filing or Transmittal"). Although Yelverton belatedly claimed an exemption with respect to the

---

   [1] Another issue is whether this court would be barred by the district court's order affirming the dismissal order from granting relief from the dismissal order.

nonbankruptcy law claims that were pursued in this adversary proceeding, the adversary proceeding itself stands dismissed. So long as the adversary proceeding remains dismissed, any pursuit of the nonbankruptcy law claims that were asserted in the adversary proceeding must be pursued by a new action in a court of competent jurisdiction.

I

On August 17, 2010, the debtor Yelverton commenced this adversary proceeding against the District of Columbia alleging that, prior to Yelverton's filing his petition commencing his bankruptcy case, the District had improperly sold his motor vehicle at an auction sale for what it claimed were unpaid parking tickets. He had standing to file the complaint because the bankruptcy case, Case No. 09-00414, was then pending in chapter 11, and he was serving as a debtor in possession exercising the powers of a trustee under 11 U.S.C. § 1107(a), including, under 11 U.S.C. § 323, a trustee's acting as a representative of the estate and having the capacity to sue on its claims. On August 20, 2010, however, the court converted the case to a case under chapter 7 of the Bankruptcy Code (11 U.S.C.). That led to the appointment of a chapter 7 trustee who became the individual with authority to represent the estate and to pursue the adversary proceeding. The automatic stay of 11 U.S.C. § 362(a)(3) (barring any act to exercise control over

3

property of the estate) barred Yelverton from pursuing the adversary proceeding so long as it remained property of the estate.

    On December 7, 2010, at a scheduling conference at which Yelverton was present, the court noted that Yelverton lacked authority to prosecute the adversary proceeding even though Yelverton reported that the trustee had declined to participate in the adversary proceeding.  The trustee could only have abandoned the claims in accordance with Fed. R. Bankr. P. 6007(a) and did not see fit to file a motion to abandon under that rule, but Yelverton could have filed a motion to compel abandonment under Fed. R. Bankr. P. 6007(b) (but he never did so).  The court ruled at that scheduling conference that the adversary proceeding would be stayed until Yelverton's authority to pursue the action was established in the main case or the trustee decided to pursue the adversary proceeding.  An order entered in this adversary proceeding on February 15, 2011, embodied that ruling in writing.

    On February 17, 2011, the District of Columbia filed a motion to dismiss this adversary proceeding on the basis that the debtor lacked standing to pursue the adversary proceeding. Yelverton never opposed that motion, nor did he seek an enlargement of time to oppose the motion in order to have time in the main bankruptcy case to seek authority to pursue the adversary proceeding.

On April 4, 2011, the chapter 7 trustee in the main bankruptcy case filed a response to the motion to dismiss, indicating that:

> the Trustee has concluded that the market value of the vehicle is less than the total outstanding secured indebtedness owed to DaimlerCrysler [sic]. . . . For these reasons, the Trustee has determined that the Vehicle is of no value to the estate. Consequently, the Trustee will take no position with respect to the Debtor's adversary proceeding against the District of Columbia.

Despite that filing, which would have served as a predicate for Yelverton's filing a motion in the main case to compel the trustee to abandon the claims, and despite the court's prior warnings that Yelverton would not be allowed to pursue the adversary proceeding unless Yelverton's authority to pursue the adversary proceeding was established in the main case, Yelverton took no steps in the main case to obtain authority to pursue the adversary proceeding in order to forestall the dismissal of the adversary proceeding:

- he did not file a motion under Fed. R. Bankr. P. 6007(b) to compel the trustee to abandon the claims to him; and
- he did not amend his schedule of exemptions to claim an exemption as to the claims pursued in the adversary proceeding,

and the claims remained property of the estate that Yelverton

5

lacked standing to pursue.[2]  Yelverton failed also to file an opposition to the motion to dismiss.

On June 27, 2011, this court entered an order dismissing the adversary proceeding.  That date of entry of the order of dismissal was:

- 202 days after the court ruled at the scheduling conference that Yelverton would not be permitted to pursue the adversary proceeding absent his having obtained authority in the main case to do so;
- 130 days after the District's motion to dismiss raised the issue of standing; and
- 84 days after the trustee filed his response.

During all that time, Yelverton had taken no steps to obtain standing to pursue the adversary proceeding.

The court's order of dismissal made clear, however, that the dismissal would be without prejudice to Yelverton's pursuing any claims abandoned to him or that he exempted from the estate.  The adversary proceeding itself had to stand dismissed as Yelverton had taken no steps to obtain standing.  Yelverton took a timely appeal to the district court.  *Yelverton v. District of Columbia*,

---

[2] Nor did Yelverton file a motion for relief from the automatic stay to permit him to pursue the proceeding, but even if he had, an issue of standing would have remained because the claims remained property of the estate, and arguably only the trustee was authorized to represent the estate.

6

Civil Action No. 11-1467.

On July 26, 2012, while the appeal was pending and more than a year after this court had dismissed the adversary proceeding, Yelverton filed in the main bankruptcy case an amended schedule of exemptions in which he attempted to claim the litigation claims pursued in the adversary proceeding as exempt property.

On September 25, 2012, the district court dismissed the appeal with prejudice pursuant to an order entered on September 25, 2012.

On October 9, 2012, Yelverton timely sought reconsideration in the district court appeal pursuant to *Appellant's Motion to Alter or Amend Decision Per Rule 59(e) and to Submit New Evidence Per Rule 60(b)(2)*, noting the amended schedule of exemptions he had filed on July 26, 2012, and arguing that the matter should be remanded to the bankruptcy court to determine whether to hear the claims.

On April 8 and 9, 2013, respectively, Yelverton renewed the request for a remand in *Appellant's Motion for Leave to Supplement Motion to Alter or Amend Decision per Rule 59(e) and to Submit New Evidence per Rule 60(b)(2),* and *Appellant's Motion to Remand to the U.S. Bankruptcy Court.*

On September 6, 2013, the district court entered an order disposing of the pending motions. The order denied both the *Motion to Alter or Amend* and the *Motion for Leave to Supplement*

reasoning, *inter alia*, that Yelverton had not exercised due diligence in bringing to the district court's attention the "new evidence" of the existence of the claim of exemption, and that:

> Finally, it is unclear how this "new evidence" "would probably lead to a judgment in his favor," . . . on the issue that was before the instant Court: whether Judge Teel correctly found based on the facts presented to him that Yelverton lacked standing because the property had not been abandoned or exempted.

It is thus clear that the dismissal of this adversary proceeding remains intact.

As to the *Motion to Remand*, the district court ruled:

> Because the circumstances have changed since Judge Teel's dismissal of the underlying adversary case, Yelverton's motion to remand is granted for the limited purpose of allowing Judge Teel to determine, <u>in the first instance</u>, whether any claims relating to the Mercedes became Yelverton's "by way of abandonment or exemption." (*See* 10-ap-10045, Dkt. No. 18; Dkt. 24.)

[Underscoring in original.]  The remand is effectively a routing to this court of the motion mis-filed in the district court appeal regarding the exemption of the claims, a motion that ought to have been filed in this court in the first instance.  *See* Fed. R. Bankr. P. 5005(c) ("Error in Filing or Transmittal").  The remand had no substantive effect other than to recognize that the bankruptcy court is the court with authority "in the first instance" to address the issue of whether the claims have become

Yelverton's by way of abandonment or exemption.[3]  The result is that the adversary proceeding remains dismissed as the order affirming that dismissal has not been altered, and that the district court has left it to the bankruptcy court to address any issue of whether the claims relating to the Mercedes became Yelverton's by way of abandonment or exemption.

II

Even if the claims *have* become Yelverton's by way of abandonment or exemption, he cannot pursue those claims in the adversary proceeding because it remains dismissed.  Yelverton never filed a motion for Rule 60 relief from the dismissal order.  (He appears to be time-barred from pursuing Rule 60 relief now after the passage of more than a year since the entry of the order of dismissal on June 27, 2012.)  *See* Fed. R. Civ. P.

---

[3]  In a *Memorandum Opinion* in *Yelverton v. Senyi de Nagy-Unyom*, Civil Action No. 13-74 (Nov. 27, 2013), the district court explained:

> Although the undersigned granted a motion to remand in one of Yelverton's bankruptcy appeal cases, **the remand had no substantive significance**.  *See* 11-cv-1467-RLW, *Yelverton v. District of Columbia*.  In that case, Yelverton sought a remand order that would have effectively resolved the legal issue of whether he had standing to pursue claims over his Mercedes-Benz.  Rather than enter the desired order, the undersigned remanded the matter to the Bankruptcy Court for the purpose of allowing Judge Teel to determine, in the first instance, whether subsequent factual developments provided Yelverton with standing to pursue the desired claims.

[Emphasis added.]

60(c)(1).)  Accordingly, at this juncture there is no pending adversary proceeding in which the court has reason to address the issue of Yelverton's ownership.  There can be no claim to adjudicate in a dismissed adversary proceeding.

III

Nor has Yelverton filed a new adversary proceeding in this court asserting the claims that had been asserted in the dismissed adversary proceeding.  That would be an appropriate proceeding in which the issue of Yelverton's ownership of the claims could be addressed if this court had subject matter jurisdiction over the new adversary proceeding.  It is questionable, however, whether this court would have subject matter jurisdiction even if the claims now belong to Yelverton.

Under 28 U.S.C. § 1334(b) the district court's jurisdiction over proceedings in a bankruptcy case (which this court exercises pursuant to a local rule of referral adopted by the district court under 28 U.S.C. § 157(a)) is limited to "civil proceedings arising under title 11, or arising in or related to cases under title 11."  The claims asserted by Yelverton to be exempt were expressly limited by the amended schedule of exemptions to nonbankruptcy law claims asserted in the adversary proceeding.  Accordingly, the exempted claims do not arise under the

Bankruptcy Code.[4]  Nor did the claims arise in the bankruptcy case: the auction sale occurred prepetition.  The claims, if indeed exempted by Yelverton, do not appear to be related to the bankruptcy case: any recovery by the debtor as the owner of the claims would have no apparent impact on the administration of the estate (the test for determining whether there is "related to" jurisdiction).  *See Turner v. Ermiger (In re Turner)*, 724 F.2d 338 (2d Cir. 1983) (decided under similar jurisdictional statute); *In re McClellan*, 99 F.3d 1420, 1422–23 (7th Cir. 1996); *Ostroff v. Am. Home Mortg. (In re Ostroff)*, 433 B.R. 442 (Bankr. D.D.C. 2010) (no jurisdiction to adjudicate debtor's state law claim of lien invalidity on exempt property).  *See also Ludwig & Robinson, PLLC v. Yelverton Law Firm, PLLC (In re Yelverton)*, 2011 WL 1628046 (Bankr. D.D.C. Apr. 28, 2011).

IV

Nor has Yelverton filed a motion or complaint in this court for a declaration that the claims have become his by way of abandonment or exemption.  Nevertheless, he raised the issue in the district court, in his motion to remand, arguing that the

---

[4] A trustee's avoidance power results in there being property of the estate only once there has been a recovery pursuant to the exercise of the avoidance power.  Because there has never been any recovery, there is no property obtained pursuant to the avoidance powers to exempt from the estate.  The debtor does not have authority to exercise a trustee's avoidance powers, and an attempt to exempt the avoidance powers from the estate would be ineffective.

claims had been exempted by him.  The District of Columbia filed an opposition arguing that an order was required for the claims to have become exempt property.  The district court recognized that the bankruptcy court was the appropriate court "in the first instance" to address any request for a determination of whether the claims had become exempt.  In effect, the district court treated Yelverton's request for a determination that there had been an exemption of the claims as a request mis-filed in the district court, and sent the request to the bankruptcy court for adjudication.  *See* Fed. R. Bankr. P. 5005(c) ("Error in Filing or Transmittal").

V

As noted previously, on July 26, 2012, more than a year after the adversary proceeding was dismissed, Yelverton filed in his bankruptcy case an amended Schedule C, which asserted, for the first time, an exemption claim regarding the nonbankruptcy law claims in this litigation.  The claim of exemption listed the value of the nonbankruptcy law claims in this adversary proceeding as $135,000 and listed the value of the claimed exemption as $67,500.  No one timely objected to that exemption claim.  *See* Fed. R. Bankr. P. 4003(b)(1).  The nonbankruptcy law litigation claims (or, more precisely, the portion of their value claimed to be exempt) became exempted from the estate pursuant to 11 U.S.C. § 522(l).  The District of Columbia's argument that an

12

order was necessary to effect an exemption from the estate is without merit.

An issue remains whether Yelverton may pursue the claims in their entirety or is limited to recovering up to $67,500 of the claims, the dollar amount he claimed to be exempt.  Because Yelverton has not yet pursued an action here or elsewhere on the claims it would be academic to address that issue, and it may prove unnecessary to decide that issue.  For example, any new adversary proceeding pursued here would likely be dismissed for lack of subject matter jurisdiction, and because the events occurred more than four years ago, the District may have a valid limitations defense in any civil action pursuing the claims anew in a court of competent subject matter jurisdiction.  Moreover, Yelverton could file a motion to compel abandonment of the claims to the extent that they have not been fully exempted.  Unless something has occurred to make the trustee change his view that the claims are not worth pursuing, an order compelling abandonment would likely ensue, thus mooting the issue of what

was the extent of the exemption.[5]

VI

Accordingly, an order follows directing that this adversary proceeding remains dismissed; and that the nonbankruptcy law claims that had been asserted in this adversary proceeding (or, more precisely, the portion of their value claimed to be exempt) became exempted from the estate pursuant to 11 U.S.C. § 522(l).

[Signed and dated above.]

Copies to: Debtor; Chapter 7 Trustee; Office of United States Trustee; Nancy Alper, Assistant Attorney General for the District of Columbia.

---

[5] Yelverton's exemption claim was premised on the claims being tenancy by the entirety property and perhaps that explains why he claimed only one-half of their value to be exempt. It is doubtful that the claims *were* tenancy by the entireties property, and listing them as such on Schedule C would not convert claims that were *not* tenancy by the entireties property into such, even if no one objected to the claim of exemption. In that event, the remaining value of the claims would remain estate property. That in turn raises the issue whether the trustee still remains in command of the claims, with Yelverton limited to recovering $67,500 out of the proceeds of the claims. Again, this is an issue that at this juncture is academic, and I decline to devote judicial resources to addressing that issue.